UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
AHMADOU SANKARA,

                        Plaintiff,                          15-cv-7761 (PKC) (JLC)

            -against-                                        MEMORANDUM
                                                            AND ORDER

POLICE OFFICER LIAM O'HARA, Shield #
20203 and DETECTIVE BRIAN KUSTERER,
Shield # 4667,

                        Defendants.
----------------------------------------------------------x

CASTEL, U.S.D.J.

            Plaintiff Ahmadou Sankara, who is proceeding pro se, brings this action pursuant

to 42 U.S.C. § 1983.  He alleges that defendants deprived him of the protections guaranteed by

the U.S. Constitution during his arrest, trial and incarceration on state criminal charges involving

a forged driver's license and stolen credit cards.  He alleges that defendants Police Officer Liam

O'Hara and Detective Brian Kusterer, who are employed by the New York City Police

Department ("NYPD"), are liable for false arrest, false imprisonment, unlawful seizure,

malicious prosecution, malicious abuse of process, excessive force, imposing unconstitutional

conditions of confinement, and inflicting emotional distress in a conscious and/or negligent

fashion.  O'Hara and Kusterer now move for judgment on the pleadings pursuant to Rule 12(c),

Fed. R. Civ. P.

            Defendants filed their motion on April 3, 2017.  Since then, Sankara has

submitted seven letters to the Court.  (Docket # 109-13, 115-16.)  They describe issues

concerning his confinement by state authorities, his immigration status and his proceedings in

state courts.  The Court has re-reviewed these letters to determine whether they have any contents potentially related to the pending motion, and concludes that they do not.

For the reasons that will be explained, Sankara's claims are dismissed in their entirety.

BACKGROUND.

In summarizing the Complaint, the Court accepts Sankara's factual allegations as true and draws every reasonable inference in his favor.  In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007).

At 10:50 p.m. on March 6, 2015, Sankara was sitting in a parked car on West 132nd Street between Seventh and Eighth Avenues in Manhattan, when defendant O'Hara approached and began to question him.  (Compl't at 2.)  According to Sankara, O'Hara explained that he was questioning Sankara because he was parked in front of a church, an assertion that Sankara contends was factually incorrect.  (Compl't at 3.)  O'Hara accused Sankara of possessing a stolen iPhone 6 plus.  (Compl't at 2.)  Sankara asserts that O'Hara lacked probable cause or reasonable suspicion for the ensuing search of his car and wallet.  (Compl't at 3.)

According to Sankara, O'Hara falsely testified before a grand jury that Sankara had a forged driver's license, and misleadingly identified himself using different shield numbers at different criminal proceedings.  (Compl't at 3.)  Sankara also asserts that O'Hara used two different shield numbers when he arrested Sankara and when he processed him in the NYPD's 32nd Precinct.  (Compl't at 7.)

Later, according to Sankara, defendant Kusterer testified to a grand jury that he used a scanner to inspect Sankara's driver's license, and that the results flagged the license as a

forgery.  (Compl't at 7.)  According to Sankara, however, Kusterer did not use an ID scanner issued by the NYPD, and instead used an ID scanner that he owned personally.  (Compl't at 7.)

The Complaint asserts that on May 7, 2015, Sankara was charged in New York Supreme Court with possession of a forged instrument in the second degree.  (Compl't at 5.) The Complaint also indicates that Sankara was charged with three counts related to possession of stolen credit cards, and possibly with charges related to a stolen iPhone.  (Compl't at 7.)  Sankara states that any charges related to a forged driver's license, forged credit cards and a stolen iPhone are "false."  (Compl't at 8.)

Defendants have submitted a copy of the grand jury's indictment filed against Sankara in the Supreme Court of New York, New York County.  (Ferrari Dec. Ex. C.)  It charged Sankara with four counts of criminal possession of a forged instrument in the second degree, in violation of New York Penal Law section 170.25.  (Ferrari Dec. Ex. C.)

The case against Sankara proceeded to trial, where, Sankara asserts, O'Hara falsely testified that Sankara had parked his car in front of a church.  (Compl't at 6.)  Sankara asserts that "no evidence was presented at trial" to support his guilt.  (Compl't at 7.)  The jury returned a guilty verdict against Sankara, and on December 9, 2015, Sankara was sentenced to seven years of incarceration.  (Compl't at 6.)

Sankara contends that while incarcerated, he has been subjected to unconstitutional conditions of confinement.  The Complaint describes an incident during Sankara's incarceration in which a corrections officer served him lunch, and, shortly afterward, he experienced chest pains and vomiting.  (Compl't at 13.)  Sankara was treated with antibiotics and pharmaceuticals.  (Compl't at 13.)  Sankara describes a strip search that occurred when he

was being escorted to receive antibiotics. (Compl't at 13-14.) Sankara states that he is now

"afraid to eat," and that he has not received adequate medication. (Compl't at 15.)

Sankara asserts the following injuries and causes of action:

> The claimant was subjected to personal and physical injuries, an unlawful seizure, false arrest and imprisonment malicious prosecution abuse of process, negligence, intentional and negligent infliction of emotional distress harrassment, unconstitutional conditions of confinement and to a deprivation of his constitutional civil and common law rights. As a result of the officers actions, claimant experienced personal physical and emotional injuries pain and suffering, fear and invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment and humiliation.[1]

(Compl't at 7.) As relief, the Court construes the Complaint to request that Sankara's criminal

conviction be vacated, and that he be awarded $50 million in damages. (Compl't at 9.)

RULE 12(c) STANDARD.

O'Hara and Kusterer move for judgment on the pleadings pursuant to Rule 12(c).

"On a 12(c) motion, the court considers 'the complaint, the answer, any written documents

attached to them, and any matter of which the court can take judicial notice for the factual

background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir.

2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). A motion to dismiss

on the pleadings is reviewed using the same standard applied to motions to dismiss pursuant to

Rule 12(b)(6), Fed. R. Civ. P. See, e.g., Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010).

Courts accept the truth of all factual allegations contained in the complaint and draw all

reasonable inferences in favor of the plaintiff. Id. "'To survive a Rule 12(c) motion, plaintiffs'

---

[1] Sankara also brought claims in this action against an Assistant District Attorney and two of his former attorneys. Those claims were dismissed in a prior Order. (Docket # 23.)

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Id. (quoting Johnson v. Rowley, 569 F.3d 40, 43-44 (2d Cir. 2009)).

Legal conclusions are not entitled to the presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679. The Complaint must include non-conclusory factual allegations that "nudge[ ]" its claims "across the line from conceivable to plausible." Id. at 680 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Defendants served Sankara with the notice to a pro se litigant required by Local Civil Rule 12.1. (Docket # 105.) Although a complaint filed by a pro se litigant must allege enough facts to state a plausible claim, the complaint is held to a less-stringent standard than is applied to a complaint filed by counsel. Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012). Courts should generously construe complaints of pro se litigants to raise the strongest allegations that they suggest. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).

DISCUSSION.

I.      SANKARA'S CLAIMS AGAINST KUSTERER ARE DISMISSED.

The Complaint's principal allegation concerning Kusterer asserts that Kusterer scanned Sankara's driver's license with a scanner that he owned personally, and that he did not use a scanner issued by the NYPD. Accepting the truth of this allegation, the Complaint does not allege that Kusterer violated Sankara's protections under the U.S. Constitution, or that he was personally involved with the deprivation of such rights. See, e.g., Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a

defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation.").

Sankara asserts that Kusterer falsely testified before a grand jury that Sankara possessed a forged driver's license. To the extent that Sankara alleges that Kusterer's grand jury testimony deprived Sankara of any constitutional protection, Kusterer is shielded by absolute immunity. Rehberg v. Paulk, 566 U.S. 356, 369 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.").

Because the Complaint does not include facts that state a plausible claim against Kusterer, all claims against him are dismissed.

## II.    SANKARA'S CLAIMS AGAINST O'HARA ARE DISMISSED.

### A.    Sankara's Criminal Conviction Bars Certain of His Claims as a Matter of Law.

Sankara brings claims of false arrest, false imprisonment and malicious prosecution. However, because Sankara was convicted of the crimes charged against him, O'Hara has a complete defense to those three claims. See, e.g., Cameron v. Fogarty, 806 F.2d 380, 387-88 (2d Cir. 1986) (a plaintiff's criminal conviction is a complete defense against his claims of false arrest, false imprisonment and malicious prosecution).

As to Sankara's malicious abuse of process claim, Heck v. Humphrey, 512 U.S. 477 (1994), bars a section 1983 plaintiff from pursuing claims that challenge the validity of a criminal conviction in state court. The Second Circuit has concluded that a malicious abuse of process claim brought by a plaintiff who was convicted in state court is barred by Heck, and instead must be brought in a habeas petition. Zarro v. Spitzer, 274 Fed. App'x 31, 34 (2d Cir. 2008) (summary order). The Complaint therefore does not state a claim for malicious abuse of process.

B.  Sankara's "Unlawful Seizure" Claim Is Dismissed.

The Complaint alleges that Sankara "was subjected to . . . an unlawful seizure." (Compl't at 7.)   According to the Complaint, Sankara sat in a parked car on West 132nd Street in Manhattan when O'Hara approached and began to question him.  (Compl't at 3.)  The Complaint states that O'Hara searched Sankara's car and wallet without probable cause, and that O'Hara "lied saying I was parked in front of the church."  (Compl't at 3.)

Construing the Complaint to raise the strongest allegations that it suggests, Triestman, 470 F.3d at 474, the Court understands Sankara to allege that O'Hara violated the Fourth Amendment's guarantee against an unlawful search by searching him without reasonable suspicion or probable cause, on the false pretext that he was parked in front of a church. Accepted as true, the Complaint alleges that O'Hara searched Sankara without probable cause or reasonable suspicion, and therefore violated Sankara's rights under the Fourth Amendment.  Cf. Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005) (when stopping a motorist, "an officer making such a stop [must] have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity.").

Where a plaintiff has "already had a full and fair opportunity to litigate his search and seizure claim" in state court proceedings, principles of collateral estoppel may bar him from re-litigating such a claim in a section 1983 action.  Phelan v. Sullivan, 541 Fed. App'x 21, 24 (2d Cir. 2013) (summary order).  In an Order dated November 6, 2017, the Court noted that certain of Sankara's submissions indicated that his attorney moved to suppress evidence and testimony on the grounds that they were obtained through an unlawful search.  (Docket # 117.)  The Court

invited the parties to make supplemental submissions concerning any such motion to suppress. (Id.)

On November 28, 2017, defendants submitted the 72-page transcript of a suppression hearing before Justice Anthony J. Ferrera of the New York Supreme Court, New York County, which took place on November 10, 2015. (Docket # 118.) At the hearing, O'Hara testified that on March 6, 2015, Sankara's car was parked at a no-parking sign near a church, and that when he approached, he observed Sankara with a glass pipe containing crack cocaine. (Id. at 19-23, 38-40.) O'Hara testified that he arrested Sankara and searched his vehicle, at which point he found loose crack cocaine and a marijuana cigarette. (Id. at 23.) A search of Sankara's person recovered five Oxycodone pills, O'Hara stated, and a search of his wallet found three forged credit cards, which were identified as forgeries through the use of a card scanner. (Id. at 24, 26-27.) Sankara called no witnesses. Sankara's attorney argued that O'Hara lacked probable cause to stop Sankara and that there was no basis to search his wallet and review the authenticity of credit cards in his possession. (Id. at 59-60.)

Justice Ferrera stated that he credited O'Hara's testimony, and found that O'Hara and his partner had a good-faith belief that Sankara's car was illegally parked in a no-parking zone, and that Sankara's gestures with the apparent crack pipe resulted in a justifiable fear of officer safety, prompting a search of the vehicle and the discovery of illegal drugs. (Id. 69-71.) Justice Ferrera further found that officers lawfully conducted an inventory search incident to Sankara's arrest, and that the search of Sankara's credit cards and use of a scanner to ascertain their authenticity did not violate Sankara's legitimate expectation of privacy. (Id. at 71.)

"'Under 28 U.S.C. § 1738 a federal court must, in according full faith and credit, give to a State court judgment the same preclusive effect as would be given to the judgment

under the law of the State in which the judgment was rendered.'" Phelan, 541 Fed. App'x at 24 (quoting Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996)). "The common-law doctrine of collateral estoppel is designed to conserve the time and resources of the court and parties by precluding a party from litigation an issue which was resolved against him in another action where he had a full and fair opportunity to contest the determination." People v. Plevy, 52 N.Y.2d 58, 64 (1980). Under New York law, a criminal defendant may be collaterally estopped from reasserting claims that were fully and fairly adjudicated in a suppression hearing. See, e.g., People v. Paccione, 290 A.D.2d 567 (2d Dep't 2002); People v. Aguilera, 185 A.D.2d 772 (1st Dep't 1992).

Sankara was provided with a full and fair hearing in the New York Supreme Court. He had the opportunity to confront defendant O'Hara and to offer evidence as to the circumstances surrounding his search and arrest. Justice Ferrera questioned O'Hara and counsel, and made findings of facts and conclusions of law on the record and in open court. The transcript of the suppression hearing totals 72 pages. Pursuant to Phelan and New York law, the Court concludes that Sankara is collaterally estopped from re-litigating the claim that he was subjected to an unlawful seizure.

Sankara's claim that O'Hara conducted an unlawful search in violation of the Fourth Amendment is therefore dismissed.

### C. Sankara Does Not Plausibly Allege that He Was Subjected to Excessive Force.

Sankara alleges that he "experienced personal/physical and emotional injuries . . . ." caused by "defendants." (Compl't at 7.) Affording him special solicitude as a pro se litigant, the Court construes this allegation to assert that O'Hara deprived Sankara of his right to be free of excessive force under the Fourteenth Amendment.

To state an excessive force claim, a complaint must plausibly allege that the defendant "(1) acted under color of law; (2) used excessive force amounting to punishment; (3) acted willfully; and (4) caused bodily injury." United States v. Cote, 544 F.3d 88, 98 (2d Cir. 2008). The Complaint's only allegations concerning any type of physical contact by a person acting under color of law involve a strip search that occurred during Sankara's incarceration, in which Sankara was physically inspected for drugs and weapons. (Compl't at 14.) The Complaint does not allege any use of force at or around the time of Sankara's arrest, and does not assert that O'Hara made physical contact with him.

The Complaint does not plausibly state a claim of excessive force against O'Hara.

D. Sankara Does Not Plausibly Allege that He Has Been Subjected to Unconstitutional Conditions of Confinement.

The Complaint asserts that Sankara has been subjected to "unconstitutional conditions of confinement . . . ." (Compl't at 7.) To allege that a plaintiff's conditions of confinement violate the Eighth Amendment's prohibition against cruel and unusual punishment, a complaint must plausibly allege "(1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety." Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013).

The Complaint includes some descriptions of Sankara's confinement. It describes a situation in which a corrections officer "saved" Sankara's lunch for him. (Compl't at 13.) After Sankara ate the lunch, he experienced chest pains and "throat complications," and requested medical attention, which was denied to him by Officer Williams. (Compl't at 13.) A second corrections officer, Officer Francise, then observed Sankara vomiting, and immediately

arranged for medical treatment. (Compl't at 13.) Sankara was treated with antibiotics. (Compl't at 13.) Sankara thereafter refused to return to his original housing assignment because Officer Williams worked there. (Compl't at 13.) He also states that he "was afraid to eat the food they were serving." (Compl't at 15.)

On August 29, 2015, Sankara was on his way to receive medication when officers escorted him to a gym area with five other inmates. (Compl't at 14.) The inmates were strip-searched, and an officer digitally penetrated Sankara. (Compl't at 14.) One officer stated that they were searching for drugs. (Compl't at 14.) When Sankara asked Captain Plaska "why is the officer violating my rights," Plaska stated that they were looking for weapons. (Compl't at 14.) Sankara observes that those answers were inconsistent. (Compl't at 14.)

Sankara states that around October 31, 2015, he became "very sick," was treated with pharmaceuticals, and was administered a chest x-ray and an EKG. (Compl't at 15.)

First, assuming that these allegations describe unconstitutional conditions of confinement, the Complaint alleges no personal involvement on the part of O'Hara. Because O'Hara was not personally involved in the conditions of Sankara's confinement, any such claim against him is dismissed. Grullon, 720 F.3d at 138 (plaintiff must show defendant's personal involvement in alleged constitutional deprivation); Walker, 717 F.3d at 125 (plaintiff must allege a "sufficiently culpable state of mind, such as deliberate indifference to inmate health or safety.").

Second, generously construing the Complaint as alleging deliberate medical indifference, the Complaint does not include facts that state a claim for relief. A plaintiff must plausibly allege that a defendant acted with deliberate indifference to plaintiff's serious medical needs. Hilton v. Wright, 673 F.3d 120, 127 (2d Cir. 2012) (per curiam). A "serious medical

need" exists if "the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Harrison v. Barkley, 219 F.3d 132, 136 (2d Cir.2000) (internal quotation marks omitted). A prison official is deliberately indifferent if he subjectively knew of but disregarded "an excessive risk to inmate health or safety." Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003). A delay in treatment resulting in serious harm may support an inference that a defendant knew of the risks posed to the inmate. Hilton, 673 F.3d at 127. According to Sankara, Officer Francise quickly arranged for medical treatment when he saw Sankara vomiting, even though Officer Williams took no action moments before. (Compl't at 13.) While under medical care, Sankara received antibiotics, prescription medication, over-the-counter medication, an x-ray and an EKG. (Compl't at 13, 15.) The Complaint does not plausibly allege that prison officials were deliberately indifferent to Sankara's medical needs.

Third, to the extent that Sankara asserts that the strip search of August 29, 2015 was in violation of the Eighth Amendment, the Complaint fails to allege facts that plausibly state a claim for relief. In conducting a strip search, an Eighth Amendment violation may occur if a corrections officer makes "intentional contact with an inmate's genitalia or other intimate area" with "no penological purpose" and does so "with the intent to gratify the officer's sexual desire or humiliate the inmate . . . ." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015). "[P]rison officials looking for contraband may subject inmates to reasonable strip searches and cavity searches," and "prison security and safety may require frequent searches of an intensely personal nature . . . ." Id. at 258. The Complaint describes Sankara's discomfort with an "intensely personal" search, but it also describes the officials' legitimate interest in locating drugs or weapons. (Compl't at 14.) There is no allegation that the search occurred for purposes of sexual

gratification or humiliation. The Complaint therefore does not plausibly allege an Eighth Amendment violation related to the strip search of Sankara.

The Court therefore concludes that Sankara has failed to allege that he has been subjected to unconstitutional conditions of confinement.

      E.  <u>Sankara Does Not Plausibly Allege Intentional or Negligent Infliction of Emotional Distress.</u>

Sankara asserts that he was subjected to "intentional and negligent infliction of emotional distress . . . ." (Compl't at 7.) Intentional infliction of emotional distress "has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." <u>Howell v. New York Post Co.</u>, 81 N.Y.2d 115, 121 (1993). "The gravamen of a cause of action for the intentional infliction of emotional distress is that the conduct complained of is especially calculated to cause, and does cause, mental distress of a very serious kind." <u>Green v. Leibowitz</u>, 118 A.D.2d 756, 757 (2d Dep't 1986). A plaintiff may recover for the negligent infliction of emotional distress when a defendant owes "a direct duty to the plaintiff . . . and a breach of that duty results in emotional injury." <u>Id.</u> For both negligent and intentional infliction of emotional distress, a plaintiff must allege "that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." <u>Berrios v. Our Lady of Mercy Med. Ctr.</u>, 20 A.D.3d 361, 362 (1st Dep't 2005).

The Complaint does not allege conduct on the part of O'Hara that states a claim of intentional or negligent infliction of emotional distress. Assuming that truth of Sankara's allegations that O'Hara searched him on the false premise that he was parked in front of a church

- 13 -

and that O'Hara misleadingly used several different shield numbers during his dealings with Sankara, such conduct is not "so extreme in degree, as to go beyond all possible bounds of decency . . . ." <u>Berrios</u>, 20 A.D.3d at 362. As to O'Hara, the Complaint also does not identify "threatening and intimidating conduct toward the accused that might give rise to an emotional distress claim." <u>Id.</u> at 363.

The Court therefore concludes that Sankara has failed to state a claim for intentional or negligent infliction of emotional distress.

CONCLUSION.

Defendants' motion to dismiss is GRANTED. The Clerk is directed to terminate the motion and to enter judgment in favor of defendants Kusterer and O'Hara. (Docket # 104.)

This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and <u>in forma pauperis</u> status is denied for purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 443-45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
December 4, 2017